

# THE ATTORNEY GENERAL

# OF TEXAS

PRICE DANIEL
ATTORNEY GENERAL

AUSTIN, TEXAS

October 10, 1949

Hon. Bascom Giles, Chairman
Veterans' Land Board
General Land Office
Austin, Texas

Opinion No. V-930

Re: Investment of Permanent
School Fund in bonds is-
sued by Veterans' Land
Board and necessity of
advertisement for compe-
titive bidding.

Dear Sir:

You have requested an opinion on the following
questions, which are quoted from your letter:

"1. It is noted that under Article 2669
the State Board of Education is authorized
to invest the Permanent Public Free School
Funds of the State in bonds of 'the State of
Texas.' The Board has been acting on the
assumption that the bonds will be State bonds
having in mind the declarations in the pro-
vision of the Constitution and in the Act
that they are obligations of the State of
Texas. Are the proposed bonds eligible for
investment as bonds of the State of Texas?

"2. If the bonds are eligible for such
investment and acceptable to the State Board
of Education can a sale be made to the State
Board of Education without compliance with
the requirements of Sections 6 and 7 of Sen-
ate Bill No. 29 requiring publication of
notice and request for competitive bids?

"3. In issuing the proposed bonds the
Board will reserve an option of redemption
prior to maturity. The bonds will bear an
interest rate less than 2½% per annum. Will
the provisions of Article 2675 excepting the
State bonds render inapplicable the restric-
tions contained in Article 2671 that bonds

> purchased for the Permanent Public Free
> School Fund shall bear interest at not
> less than 2½% per annum?"

The bonds to which you refer are those provided for in Section 49-b, Article III of the Constitution of Texas, which section was adopted on November 7, 1946, and in the enabling act, Senate Bill No. 29, Acts of the Fifty-first Legislature. Your first question is manifestly answered by the constitutional provision itself. It is specifically provided therein that bonds issued thereunder "shall be executed by said Board as an obligation of the State of Texas." These bonds would, therefore, be eligible investments under Article 2669, V.C.S., which provides that the State Board of Education is authorized and empowered to invest the permanent public free school funds of the State "in bonds of the United States, the State of Texas . . ."

However, it is our opinion that compliance must be had with the requirements of Sections 6 and 7 of Senate Bill No. 29 with respect to the publication of notice and request for competitive bids even though the bonds ultimately may be purchased for the benefit of the Permanent School Fund. In Sections 6 and 7, it is provided:

> "Sec. 6. When the Board shall have authorized the issuance of a series of said bonds and shall have determined to call for bids therefor, it shall be the duty of the Board to publish at least one (1) time not less than twenty (20) days before the date of said sale an appropriate notice thereof. Such publication shall be made in a daily newspaper . . .

> "Sec. 7. None of said bonds shall be sold for less than their face value with accrued interest from date, and all of such bonds shall be sold after competitive bidding to the highest and best bidder, except in those cases where the administrators of the state's funds given priority exercise, within fifteen (15) days after notice thereof, their right of priority to take such bonds at the highest price bid by another . . ." (Emphasis added)

Section 6 makes it the duty of the Board to publish the notice of sale. Section 7 provides that all such bonds shall be sold after competitive bidding and then to the highest and best bidder except where the administrators of the state's funds exercise their right of priority. Such right of priority can be exercised only to purchase the bonds "at the highest price bid by another." It is obvious that the quoted phrase could refer only to a bid submitted after proper notice had been given. It is our opinion that the statute contemplates that the Veterans' Land Board issue the bonds on the best possible terms regardless of whether they are purchased by administrators as investments for state's funds or whether they are purchased by private investors. We have been advised that the Board subsequent to the date of your letter of request determined to publish notice of sale and request for competitive bids and that the same has now been published. It is our opinion that the Board in this determination has complied both with the letter and the spirit of the law.

Your third question presents more difficult problems. Article 2675 provides in part:

"The provisions of the six preceding articles shall extend to any bonds or securities other than the bonds of the State or of the United States . . ."

Article 2671, which is one of the "six preceding articles," outlines the conditions upon which bonds may be purchased by the Board of Education. It provides in part:

" . . . No bonds, obligations, or pledges shall be so purchased <u>that bear less than two and one-half (2½%) per cent interest.</u> No bonds, obligations, or pledges <u>except those of the United States, the State of Texas, and the University of Texas</u>, shall be so purchased when the indebtedness of the county, city, precinct, or district issuing same, inclusive of those offered, shall exceed seven (7%) per cent of the assessed value of the real estate therein . . ." (Emphasis added)

It is noted that the exception provision applies only to the seven (7%) limitation, and that no exception is provided with respect to the 2½% limitation. The

clear inference is, therefore, that the 2½% limitation would apply to all bonds purchased.

Both Articles 2671 and 2675 were originally enacted as part of Chapter 124, Acts of the Twenty-ninth Legislature in 1905. They appear as Sections 4 and 9, respectively. Although Article 2671 has been amended numerous times since its original enactment, Article 2675 has not been changed. Moreover, the exception, "except those of the United States, the State of Texas, and the University of Texas," in Article 2671 did not appear in the original act and was not added thereto until the enactment in 1929 of Chapter 278, Acts of the Forty-first Legislature. If neither the limitation as to interest rate nor the 7% valuation limitation applied to bonds of the State of Texas by virtue of the provisions of Article 2675, then it could be argued that the reason why the 7% assessed valuation exception was added to Article 2671 was to make the interest rate limitation applicable to all bonds purchased by the Board of Education. The 1929 act, being subsequent in time of passage to the 1905 act, would govern.

However, we have concluded in any event that the Constitutional amendment itself and the enabling act make these bonds eligible investments for the Permanent School Fund. The Constitutional amendment provides that the bonds shall bear interest at a rate not to exceed three (3%) per cent per annum. It also provides that in "the sale of any such bonds, preferential right of purchase shall be given to the administrators of the various teacher retirement funds, the Permanent University Funds, and the Permanent Free School Funds." See also Section 5 of Senate Bill No. 29, which contains a similar provision.

You will note that the only limitation as to interest rate specified in the Constitution is the maximum three (3%) per cent, and that no limitation is placed on a minimum rate. You will also note that the preferential right is given to the administrators of the named funds in the sale of any such bonds. This preferential right of purchase is granted by the Constitution itself, and is independent of any other constitutional or statutory grant. It is our opinion that the preferential right attaches to any bonds issued under this constitutional or statutory grant at the interest rate specified in the "highest price bid by another," regardless of the fact that such rate may be less than 2½%. As a practical consideration, it may be added that during the past

several years millions of dollars of bonds have been issued that bear less than 2½% interest. We think that it clearly was within the contemplation of the Legislature in providing for the submission of Section 49-b of Article III and of the qualified voters in adopting the same that the bonds could bear less than 2½% interest, and in most probabilities would. The preferential right attaches to the sale of <u>any such bonds</u>, and it is our opinion that this provision makes them eligible as investments for the Permanent School Fund. If there is any conflict between Article 2671 and Section 49-b, then, of course, the Constitution would govern in this regard.

SUMMARY

Bonds issued by the Veterans' Land Board under the authority of Section 49-b, Article III, Constitution of Texas, and its enabling act (S. B. 29, Acts 51st Leg., 1949) are obligations of the State of Texas, and are eligible investments for the Permanent School Fund even though such bonds may bear less than 2½%.

The Veterans' Land Board in the sale of any bonds must comply with the requirements of Sections 6 and 7 of Senate Bill No. 29 requiring publication of notice of sale and request for competitive bids. Such bonds may be purchased by the Board of Education for the benefit of the Permanent School Fund only after such publication and only if the Board of Education properly exercises its right of priority to purchase the bonds at the highest price bid by another.

Very truly yours,

ATTORNEY GENERAL OF TEXAS

By George W. Sparks
Assistant

APPROVED

FIRST ASSISTANT
ATTORNEY GENERAL

GWS-s